| | |
|---|---|
| | |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| P.S.M., | Case No. 2:19-cv-01113-SHK |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff P.S.M.[1] ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner," "Agency," or "Defendant") denying her application for disability insurance benefits ("DIB"), under Title II of the Social Security Act (the "Act"). This Court has jurisdiction under 42 U.S.C. § 405(g), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

---

[1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with respect to Plaintiff's medical records discussed in this Opinion and Order.

# I. BACKGROUND

Plaintiff filed an application for DIB on February 25, 2015, alleging disability beginning on December 28, 2013. Transcript ("Tr.") 170-73.[2] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on April 18, 2018, ALJ Cynthia Floyd determined that Plaintiff was not disabled. Tr. 17-31. Plaintiff sought review of the ALJ's decision with the Appeals Council, however, review was denied on December 11, 2018. Tr. 1-6. This appeal followed.

# II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing.") (citation omitted). A reviewing

---

[2] A certified copy of the Administrative Record was filed on July 10, 2019. Electronic Case Filing Number ("ECF No.") 14. Citations will be made to the Administrative Record or Transcript page number rather than the ECF entry and page number.

2

court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

## III. DISCUSSION

### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

(a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

(b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps

3

one through four, and the Commissioner carries the burden of proof at step five. <u>Tackett</u>, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. <u>See</u> 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. <u>See</u> 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [DIB]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. <u>See</u> 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. <u>See</u> 20 C.F.R. § 404.1520(e).

///

4

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [DIB]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB]. See id.

Id. at 1098-99.

**B. Summary Of ALJ's Findings**

The ALJ determined that "[Plaintiff] last met the insured status requirements of the . . . Act through December 31, 2017." Tr. 19. The ALJ then found at step one, that "[Plaintiff] did not engaged in [SGA] during the period from her alleged onset date of December 28, 2013 through her date last insured of December 31, 2017. (20 CFR 404.1571 et seq.)." Id. At step two, the ALJ found that "[t]hrough the date last insured, [Plaintiff] had the following severe impairments: left knee osteoarthritis, status post left knee arthroplasty; and fibromyalgia, stable (20 CFR 404.1520(c))." Tr. 20. At step three, the ALJ found that "[t]hrough the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." Tr. 23.

///

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except that [Plaintiff] could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk 6 hours; sit 6 hours; frequently climb ramps and stairs; frequently stoop, kneel, crouch and balance; occasionally climb ladders, ropes, and scaffolds; and [Plaintiff] needed to avoid concentrated exposure to workplace hazardous [sic] such as working at unprotected heights, fast moving machinery, and traversing uneven or slippery terrain.

Tr. 24. The ALJ then found, at step four, that "[t]hrough the date last insured, [Plaintiff] was capable of performing [PRW] as an administrative clerk, customer service representative, and administrative assistant. This work did not require the performance of work-related activities precluded by [Plaintiff's] [RFC] (20 CFR 404.1565)." Tr. 30. Thus, the ALJ concluded that Plaintiff "was not under a disability, as defined in the . . . Act, at any time from December 28, 2013, the alleged onset date, through December 31, 2017, the date last insured (20 CFR 404.1520(f))." Tr. 31.

### C. Issues Presented

In this appeal, Plaintiff raises two issues: (1) whether the ALJ properly evaluated Plaintiff's testimony, and (2) whether the ALJ properly evaluated the opinions of the consultative psychologist. ECF No. 15, Joint Stip. at 4.

### D. Court's Consideration Of First Issue

#### 1. Parties' Arguments

Plaintiff argues that the ALJ erred by failing to properly consider her subjective symptom statements. Id. Plaintiff adds that the ALJ "did not cite to any affirmative evidence of malingering" and, "[t]herefore, . . . was required to articulate clear and convincing reasons for rejecting [her] testimony." Id. at 6.

6

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony, and "[t]he ALJ's rejection of [her] testimony based on a lack of corroboration from medical evidence constitutes legal error." Id. at 7-8.

Defendant responds that the ALJ's finding was supported by substantial evidence and adds that "[c]ontrary to Plaintiff's contentions, the ALJ did not look only to the testimony's lack of consistency with the objective medical evidence of record, but also considered whether and to what extent Plaintiff's subjective statements were consistent with the other evidence in the record." Id. at 11 (citations and internal quotations marks omitted).

Defendant cites to several portions of the medical records that were discussed generally by the ALJ. Id. at 10. Specifically, Defendant notes that following a surgery performed on Plaintiff's left knee in May 2016, Plaintiff "was discharged home the next day in stable condition, having been cleared by physical therapy." Id. (citations omitted). Defendant argues that this, and other evidence "was inconsistent with [Plaintiff's] testimony that, e.g., that [sic] her left knee would lock up[;] that, if she sat too long, she had to move it around or get up to move; and that, despite the record evidence that her fibromyalgia was stable, she had been having more pain." Id. (citations and internal quotation marks omitted). Defendant also cited Plaintiff's activities of daily living ("ADLs") that were discussed by the ALJ throughout the decision and argues that "[s]uch admitted activities . . . belied her claims of disabling symptoms." Id. at 12.

**2.     ALJ's Consideration Of Plaintiff's Symptom Statements**

The ALJ first observed Plaintiff's statements "regarding the intensity, persistence, and limiting effects of her symptoms." Tr. 25. The ALJ noted that Plaintiff:

> testified that she underwent partial knee replacement, which helped with pain. She stated that her knee locks up when she sits to[o] long,

7

and that she must get up and move around, which resolves her pain. In addition, she stated that she suffers from fibromyalgia and that she has more pain in the hands and elbows, for which she was advised to take medication. [Plaintiff] testified that she walks twice per week for a mile and a half, and that she must put her feet up when she goes grocery shopping due to big toe pain. She testified that she takes Wellbutrin for major depression and that she takes anxiety medication. Further, she stated that she attends physical therapy for her hip, and that she cannot grip or lift herself up, which comes and goes. She testified that she experienced panic attacks since 1995, and that her last panic attack was three months prior, which causes difficulty breathing and shakiness. [Plaintiff] further testified that she takes pain medication for her knee pain, and that her knee pain wakes her at night. She also stated that she had panic attacks while working, which caused an inability to function.

Id.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision." Id. The ALJ added that "the objective medical evidence . . . cannot be fully reconciled with the level of pain and limiting effects of the impairments [Plaintiff] alleges." Id. The ALJ also added that "[a]lthough there is evidence of the existence of the impairments listed above, the medical evidence does not support the alleged level of limitation arising from these impairments." Id.

After discussing Plaintiff's medical treatment records, but not specifying which evidence contradicted which of Plaintiff's statements that the ALJ found was not entirely credible, the ALJ concluded that:

8

> Based on the entire record, including the testimony of [Plaintiff], the undersigned concludes the evidence fails to support [Plaintiff's] assertion of total disability. Despite the evidence demonstrating that the claimant has suffered from a medically determinable 'severe' impairment, the evidence also establishes that [Plaintiff] retains the capacity to function adequately to perform many basic activities associated with work. In sum, the above [RFC] assessment is supported by the objective medical evidence contained in the record. Treatment notes in the record do not sustain [Plaintiff's] allegations of disabling pain and limitations. [Plaintiff] does experience some levels of pain and limitations but only to the extent described in the [RFC] above.

Tr. 30.

### 3. Standard To Review ALJ's Analysis Of Plaintiff's Symptom Statements

When a claimant has medically documented impairments that "might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ must give 'specific, clear, and convincing reasons for rejecting' the testimony by identifying '<u>which</u> testimony [the ALJ] found not credible' and explaining '<u>which</u> evidence contradicted that testimony.'" Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017) (emphasis in original) (quoting Brown-Hunter v. Colvin, 806 F.3d 487, 489, 494 (9th Cir. 2015). "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security cases.'" Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

"The ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). Also, while an ALJ cannot reject the severity of

subjective complaints solely on the lack of objective evidence, the ALJ may nonetheless look to the medical record for inconsistencies. See Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599-600 (9th Cir. 1999) (finding that "[t]he ALJ provided clear and convincing reasons for rejecting [Plaintiff's] testimony" by "point[ing] to specific evidence in the record—including reports by [Plaintiff's] doctors]—in identifying what testimony was not credible and what evidence undermined [Plaintiff's] complaints.").

### 4. ALJ's Decision Is Not Supported By Substantial Evidence

Here, the ALJ's rejection of Plaintiff's symptom statements fails for several reasons. First, the ALJ did not identify which evidence contradicted which of Plaintiff's testimony. See Laborin, 867 F.3d at 1155. Rather, the ALJ only discussed Plaintiff's medical records generally and did not explain how any of those records contradicted any of Plaintiff's symptom statements.

Second, even if the ALJ had provided a discussion of which evidence contradicted which of Plaintiff's statements for this Court to review, the ALJ's finding would still fail because the ALJ ignored other entries in the record that appear to support Plaintiff's symptom statements. See Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding an ALJ cannot selectively rely on some entries in a plaintiff's records while ignoring others).

For example, when discussing the medical evidence, the ALJ considered several records relating to Plaintiff's knee pain. In one such instance, the ALJ observed that:

> In May 2014, [Plaintiff] complained of left knee pain over the past five years, and that she underwent arthroscopic surgery of the left knee. She reported continued pain and instability of the left knee. On exam, she had tenderness over the medial and lateral joint line and crepitation at the patellofemoral joint. It was noted that images brought by [Plaintiff] of the left knee revealed moderate degenerative joint disease with mild

10

> effusion. At that time, she received a steroid injection, and her left knee
> was drained.

Tr. 25 (citing Tr. 669-70).

The ALJ's observation of this record omits discussion of notations indicating that following the "surgery of [Plaintiff's] left knee[,] [Plaintiff] says that at the beginning she was doing fine but she has sustained multiple falls. As a result[,] she has continued to have pain and instability of the left knee. She says that the knee gives out and it's painful as well as stiff." Tr. 669. The record further reveals that Plaintiff's range of motion in her left knee ranged from zero-to-ninety-five degrees, and, in addition to having her knee drained and receiving a steroid injection in her knee as the ALJ observed, Plaintiff also received a lidocaine injection in her knee. Tr. 669-70.

Thus, the ALJ observed only evidence indicating a reduction of pain in Plaintiff's left knee following knee surgery but ignored other evidence indicating that following surgery, Plaintiff had a limited range of motion in her left knee, her knee gave out on her, she sustained multiple falls, and she continued to have pain and received a lidocaine injection, presumably to treat pain. The ALJ's consideration of only the evidence that supports rejecting Plaintiff's statements, while ignoring other evidence that supports Plaintiff's statements, undercuts the ALJ's already anemic rejection of Plaintiff's symptom statements. This evidence also undercuts the ALJ's RFC finding that Plaintiff could stand and walk six hours; frequently stoop, kneel, crouch, and balance; and occasionally climb ladders, ropes, and scaffolds. Tr. 24.

Third, Defendant's post-hoc rationale does not cure the ALJ's lack of analysis because the Court cannot affirm the ALJ's decision with reasons not provided by the ALJ. See Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (the Court cannot affirm the ALJ's decision on grounds not invoked by the Commissioner) (citation omitted).

Fourth, even if Defendant could supply the analysis for the ALJ, Defendant's analysis appears flawed. Taking Plaintiff's knee pain as an example, Defendant argues that Plaintiff's discharge from the hospital in stable condition the day after having her knee surgically replaced in May 2016 contradicts Plaintiff's testimony that her left knee locks up if she sits too long. ECF No. 15, Joint Stip. at 10. It is unclear how being discharged from the hospital in stable condition following a knee replacement surgery contradicts Plaintiff's statement that her knee locks up if she sits too long, or that she takes pain medication for her knee pain, and that her knee pain wakes her at night. The former indicates merely that Plaintiff was able to leave the hospital, while the latter indicates that she had some residual symptoms, despite receiving surgical intervention to hopefully ameliorate her condition.

Moreover, the record cited by the ALJ appears to defeat Defendant's argument, at least to the extent Defendant's argument stands for the proposition that being discharged from the hospital in stable condition the day after having one's knee replaced contradicts any residual symptoms one might experience following their surgery. Specifically, the ALJ observed that on May 19, 2016, Plaintiff "underwent a left knee unicompartmental replacement" and that "[d]uring [Plaintiff's] initial physical therapy examination three weeks after the knee replacement surgery[,] [Plaintiff's] gait was antalgic[,] . . . she lacked full knee extension at heel strike[,]" she "used a single point cane with the right hand, and it was recommended that she use it to assist with ambulation." Tr. 27 (citations omitted). This evidence cited by the ALJ demonstrates that three weeks after Plaintiff's surgery—which the Court notes took place two-and-a-half years into Plaintiff's alleged disability onset in December 2013—Plaintiff had significant limitations in her mobility as a result of her knee impairment. Thus, this evidence cuts against Defendant's argument that Plaintiff's discharge from the hospital the

12

day after Plaintiff's surgery constitutes substantial evidence for the ALJ to have rejected Plaintiff's symptom statements.

Additionally, the ALJ also noted that in July 2016, Plaintiff reported a reduction in her pain level, but that in October 2016, "[a] nurse practitioner noted [Plaintiff's] use of a cane during an office visit." Id. Thus, pursuant to the ALJ's own observation of the record, Plaintiff was still in pain in July 2016, two months after her knee surgery, and that in October 2016, five months after her knee surgery, Plaintiff was still using a cane to ambulate. On the record before the Court, and as cited by the ALJ, Plaintiff's impairments caused by her knee led Plaintiff to have her knee replaced two-and-a-half years into the alleged disability time period and left Plaintiff in pain and ambulating with a cane until nearly three years into the alleged disability time period.

This evidence further cuts against Defendant's argument that Plaintiff's discharge from the hospital amounted to substantial evidence for the ALJ to reject Plaintiff's statement that sitting causes her knee to lock up. It appears on the record before the Court that Plaintiff's knee caused significant limitations throughout the majority of the relevant time period.

Finally, the Court notes that there is evidence in the record that Plaintiff's knee impairment was severe leading up to Plaintiff's 2016 surgery. For example, the ALJ observed emergency room reports from October 2014 indicating that Plaintiff fell and sustained a sprained ankle and a fractured knee as a result of her fall. Tr. 26 (citations omitted). The ALJ also noted that in the first two years of Plaintiff's alleged disability period, Plaintiff experienced pain, "crepitus and varus deformities over the knees[,]" it was noted she could walk for only twenty minutes at a time, and that "images of [Plaintiff's] left knee showed slightly more prominent osteoarthritis with more prominent changes in the tibiofemoral joint . . . [and] early degenerative joint disease, especially in the medial compartment[,]" "extensive derangement[,]" and "severe medial compartment degenerative disc

13

disease with compression in Plaintiff's left knee." Tr. 26-27 (citations omitted). This evidence further supports Plaintiff's symptom statements, undercuts Defendant's interpretation of the evidence and arguments, and adds to the conclusion that the ALJ's rejection of Plaintiff's statements was not supported by substantial evidence in the record. As such, the Court finds that remand for further proceedings is necessary so that the ALJ may reassess Plaintiff's symptom statements. On remand, the ALJ shall consider and discuss the aforementioned evidence.

Because the Court remands as to the first issue raised by Plaintiff, it does not reach Plaintiff's second assignment of error.

### IV. CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). See Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing.") (citation and internal quotation marks omitted).

IT IS SO ORDERED.

DATED: 12/23/2019

HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge